

**ORDERED in the Southern District of Florida on September 8, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

                                         Case No. 21-19419

James Andrew Joseffy,

                                         Chapter 11

        Debtor.

_____/

## MEMORANDUM OPINION AND ORDER
## DENYING DEBTOR'S MOTION FOR CRAMDOWN

        The Debtor's plan does not pay the rejecting unsecured class of creditors in full, so he seeks to confirm by cramdown.[1] But the Debtor is retaining exempt and non-exempt property. Since the enactment of BAPCPA and § 1115, a split of authority has developed over whether § 1115 eliminates the absolute priority rule in individual chapter 11 cases. Courts have also long disagreed whether the absolute priority rule

---

[1] Doc. 122.

bars an individual debtor from retaining exempt property. For the reasons that follow, the Court concludes that the absolute priority rule is alive and well in individual chapter 11 cases and that individual debtors may retain their exempt property without violating it. Because the Debtor proposes to retain *non-exempt* property, however, the plan in this case may not be confirmed as proposed.

## I.    Background

On September 29, 2021, the Debtor filed for chapter 11 bankruptcy. At the time, the Debtor owned (among other things):

- real property located at 1045 Greenboro Road, Washington, Georgia;

- a Ford F-250 truck;

- a Rolex watch; and

- a Casio dive watch.[2]

The Debtor did not claim either of the watches as exempt,[3] but he did claim the Greenboro Road property and the Ford F-250 as exempt under Bankruptcy Code § 522(b)(3)(B) because he owns them as tenants by the entirety with his non-filing spouse.[4]

---

[2] Doc. 1, Schedule A/B.

[3] Doc. 99, Ex. B. The Debtor initially listed the watches on Schedule C. Doc. 1, Schedule C. But at confirmation, the Debtor conceded the watches are not exempt. Doc. 99, Ex. B.

[4] Doc. 1, Schedule C; *see also* 11 U.S.C. § 522(b)(3)(B) (providing that a debtor may exempt from property of the estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law").

The Debtor now seeks to confirm a chapter 11 plan under which he proposes to pay unsecured creditors, who hold more than $750,000 in allowed unsecured claims, a total of $30,000 over five years.[5] Although the dividend to unsecured creditors is only 3.99%, it is undisputed that it is more than unsecured creditors would receive in a chapter 7 liquidation.[6]

Two classes of secured creditors have voted in favor of the plan.[7] But the only Class 4 unsecured creditors who have cast ballots have voted to reject the plan.[8] The Debtor now seeks to confirm by cramdown under Bankruptcy Code § 1129(b) despite Class 4's rejection of the plan.[9]

Bankruptcy Code § 1129(b) allows a debtor to confirm a plan over the rejection of an impaired class so long as "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."[10] Here, the Debtor argues that the plan does not discriminate unfairly, and is fair and equitable, because unsecured creditors are

---

[5] Doc. 99 at 7; Doc. 100 at 18.

[6] Doc. 99 at Ex. B.

[7] Docs. 116 & 118.

[8] Docs. 112 & 113.

[9] Doc. 122.

[10] 11 U.S.C. § 1129(b)(1) ("Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.").

receiving more under the plan than they would receive in a chapter 7 liquidation.[11] The U.S. Trustee, however, objects that the plan is not fair and equitable because it violates the § 1129(b)(2)(B) "absolute priority rule."

## II.   Analysis

The absolute priority rule, which generally "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan,"[12] dates back more than 80 years to the Supreme Court's decision in *Case v. Los Angeles Lumber Products Co.*[13] There, the Supreme Court considered whether to confirm a plan under section 77B of the Bankruptcy Act, which provided that a plan shall be confirmed if (among other things) "it is *fair and equitable* and does not discriminate unfairly in favor of any class of creditors or stockholders."[14] Writing for the majority, Justice William O. Douglas observed that, before the advent of section 77B, the term "fair and equitable" had acquired a fixed meaning in equity receivership reorganizations.[15]

That fixed meaning included the "rules of law" enunciated in the Supreme Court's decisions in *Louisville Trust Co. v. Louisville, New Albany & Chicago Railway*

---

[11] Doc. 122, ¶ 10.

[12] *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (quoting *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388, 401 (8th Cir. 1986)).

[13] 308 U.S. 106, 116 – 17 (1939); *In re Maharaj*, 681 F.3d 558, 568 – 69 (4th Cir. 2012) ("In *Case v. Los Angeles Lumber Products Co.*, the Court for the first time used the term 'absolute priority' to describe the rule.") (citation omitted).

[14] *Case*, 308 U.S. at 114 – 15 & n.6 (emphasis added).

[15] *Id.* at 115.

4

*Co.*;[16] *Northern Pacific Railway Co. v. Boyd*;[17] and *Kansas City Terminal Railway Co. v. Central Union Trust Co.*,[18] all of which dealt with the priority to be accorded creditors over shareholders in reorganization plans.[19] In *Louisville Trust Co.*, the Supreme Court "reaffirmed" the "familiar rule" that a "stockholder's interest in the property [of an insolvent corporation] is subordinate to the rights of creditors"—"[f]irst, of secured, and then of unsecured."[20] Based on this rule, which the *Boyd* Court later referred to as the "fixed principle" by which plans of reorganization were to be governed, the *Louisville Trust Co.* Court denounced "any arrangement . . . by which the subordinate rights and interests of the stockholders are attempted to be secured at the expense of the prior rights of either class of creditors."[21] Then, in *Kansas City Terminal Railyard Co.*, the Supreme Court again reaffirmed the rule that "to the extent of their debts[,] creditors are entitled to priority over stockholders against all the property of an insolvent corporation."[22] This "rule of full or absolute priority," according to Justice Douglas, had been "properly applied" throughout the history of

---

[16] 174 U.S. 674 (1899).

[17] 228 U.S. 482 (1913).

[18] 271 U.S. 445 (1926).

[19] *Case*, 308 U.S. at 115 – 16.

[20] *Id.* at 116 (quoting *Louisville Trust Co.*, 174 U.S. at 684).

[21] *Id.* (quoting *Louisville Trust Co.*, 174 U.S. at 684).

[22] *Id.* (quoting *Kansas City Terminal Ry. Co.*, 271 U.S. at 455).

equity reorganizations in "passing on objections made by various classes of creditors that junior interests were improperly permitted to participate in a plan."[23]

"Although based on the 'fair and equitable' requirements found in § 77B of the Bankruptcy Act ("the Act"), the absolute priority rule had itself never been codified under the Act."[24] When Congress amended the Act in 1952 to modify the requirements for confirming a plan under what was then Chapter XI, it repealed the "fair and equitable" requirement, thereby doing away with the judicially created absolute priority rule.[25] Congress explained it eschewed the absolute priority rule because it was unrealistic:

> [T]he fair and equitable rule, as interpreted in *Northern Pacific Railway Co. v. Boyd*, and *Case v. Los Angeles Lumber Products Co., Ltd.*, cannot realistically be applied . . . . Were it so applied, no individual debtor and . . . no corporate debtor where the stock ownership is substantially identical with management could effectuate an arrangement except by payment of the claims of all creditors in full. . . . The proposed amendment is designed to remove the fair and equitable provision, and by the paragraph added to each of the amended sections it is made clear that the rule of the *Boyd* and *Los Angeles* cases shall not be operative . . . .[26]

When Congress passed the Bankruptcy Act of 1978, it reversed course and codified the judicially created "absolute priority rule" in Bankruptcy Code § 1129(b).[27]

---

[23] *Id.* at 118.

[24] *In re Maharaj*, 681 F.3d 558, 560 (4th Cir. 2012).

[25] *Id.* at 560 – 61.

[26] H.R. Rep. No. 82–2320, 82nd Congress (1952) *reprinted in* 1952 U.S.C.C.A.N. 1960, 1981 – 82 (citations omitted); *In re Maharaj*, 681 F.3d at 561.

[27] 11 U.S.C. § 1129(b)(2)(B)(ii); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) ("The [absolute priority] rule had its genesis in judicial construction of the undefined requirement of the

Under then-Bankruptcy Code § 1129(b), a plan could be confirmed, even if the debtor did not have the vote of all the impaired classes, so long as "the plan [did] not discriminate unfairly, and [was] *fair and equitable*, with respect to each class of claims or interests that [were] impaired under, and [had] not accepted, the plan."[28] With respect to a class of unsecured creditors, § 1129(b) provided that a plan was "fair and equitable" if:

- the unsecured creditor class was paid in full; or

- the holder of any claim or interest that is junior to the claims of such class would not receive or retain under the plan on account of such junior claim or interest any property.[29]

For three decades, the absolute priority rule remained unchanged. But, in 2005, Congress made significant changes to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),[30] two of which affected the absolute priority rule.

First, BAPCPA expanded the definition of "property of the estate" in individual chapter 11 cases by adding § 1115. Before BAPCPA, "property of the estate" in an individual chapter 11 case was exclusively governed by § 541, which provides that

---

early bankruptcy statute that reorganization plans be 'fair and equitable.' The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978.") (citations omitted).

[28] 11 U.S.C. § 1129(b)(1) (1978) (emphasis added).

[29] *Id.* § 1129(b)(2)(B).

[30] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[31] After BAPCPA, § 1115 provides that property of the estate in an individual chapter 11 case also includes property acquired postpetition and earnings from postpetition services:

> (a)    In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—
>
> > (1)    all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
> >
> > (2)    earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

Second, BAPCPA amended Bankruptcy Code § 1129(b)(2)(B) to account for § 1115. Post-BAPCPA, Bankruptcy Code § 1129(b)(2)(B) allows a debtor to satisfy the absolute priority rule even if the debtor retains the property included in the estate under § 1115:

> (i)    the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii)    the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which*

---

[31] 11 U.S.C. § 541(a).

> *the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*[32]

The Debtor's plan does not pay unsecured creditors in full. To the contrary, it pays a comparatively paltry sum; less than four cents on the dollar. Yet, the Debtor proposes to retain the exempt Greenboro property and Ford F-250, the non-exempt watches, and $12,060 in his debtor-in-possession account.

At the Debtor's confirmation hearing, the U.S. Trustee pointed out that courts have long disagreed over whether the absolute priority rule precludes a debtor from retaining exempt property, and since the passage of BAPCPA, a split of authority has developed over whether the absolute priority rule continues to apply in individual chapter 11 cases. For the reasons that follow, the Court concludes that the absolute priority rule continues to apply in individual chapter 11 cases, it does not preclude debtors from retaining exempt property, but it does preclude them from retaining non-exempt property other than property described in § 1115.

A.   The absolute priority rule applies in individual chapter 11 cases.

As part of BAPCPA, Congress amended Bankruptcy Code § 1129(b)(2)(B)(ii)—the absolute priority rule—to provide that, even if a plan does not pay unsecured creditors in full, the debtor may still "retain property included in the estate under section 1115," causing a split of authority over what Congress meant by that phrase.[33]

---

[32] 11 U.S.C. § 1129(b)(2)(B)(i) – (ii) (emphasis added).

[33] *Compare Friedman v. P+P, LLC (In re Friedman)*, 466 B.R. 471, 482 – 83 (9th Cir. BAP 2012); *SPCP Grp., LLC v. Biggins*, 465 B.R. 316, 322–23 (M.D. Fla. 2011); *In re Shat*, 424 B.R. 854, 865 – 68 (Bankr.

Cases adopting the "broad view" have concluded that Congress intended for § 1115 to subsume § 541: property of the estate included in the estate under § 1115 includes all the § 541 property of the estate *plus* the property added by § 1115 (property of the kind specified in § 541 that is acquired postpetition and earnings for postpetition services).[34] Under that "broad view," then, an individual chapter 11 debtor can retain—without paying unsecured creditors in full—*all* property of the estate, whether it is acquired prepetition or postpetition. In other words, under the "broad view," Congress effectively abrogated the absolute priority rule in individual chapter 11 cases.[35]

---

D. Nev. 2010); *In re Johnson*, 402 B.R. 851, 852 – 53 (Bankr. N.D. Ind. 2009); *In re Roedemeier*, 374 B.R. 264, 275–76 (Bankr. D. Kan. 2007); *In re Tegeder*, 369 B.R. 477, 479 – 80 (Bankr. D. Neb. 2007) *with In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013); *Dill Oil Co., LLC v. Stephens (In re Stephens)*, 704 F.3d 1279, 1286 – 87 (10th Cir. 2013); *In re Maharaj*, 681 F.3d 558, 568–69 (4th Cir. 2012); *In re Martin*, 497 B.R. 349, 357 (Bankr. M.D. Fla. 2013); *In re Lee Min Ho Chen*, 482 B.R. 473, 481 – 82 (Bankr. D.P.R. 2012); *In re Arnold*, 471 B.R. 578, 588 – 89 (Bankr. C.D. Cal. 2012); *In re Lindsey*, 453 B.R. 886, 903 (Bankr. E.D. Tenn. 2011); *In re Kamell*, 451 B.R. 505, 512 (Bankr. C.D. Cal. 2011); *In re Draiman*, 450 B.R. 777, 821 – 22 (Bankr. N.D. Ill. 2011); *In re Walsh*, 447 B.R. 45, 48 (Bankr. D. Mass. 2011); *In re Karlovich*, 456 B.R. 677, 680 – 81 (Bankr. S.D. Cal. 2010); *In re Gelin*, 437 B.R. 435, 441 (Bankr. M.D. Fla. 2010); *In re Mullins*, 435 B.R. 352, 360 – 61 (Bankr. W.D. Va. 2010); *In re Gbadebo*, 431 B.R. 222, 228–30 (Bankr. N.D. Cal. 2010).

[34] *See, e.g., In re Friedman*, 466 B.R. at 482 ("Section 1115's identification of estate property consists of the property contained in § 541 *and* the two post-petition acquired assets—newly acquired property and income."); *In re Shat*, 424 B.R. at 863 ("Section 1115, however, itself includes Section 541(a) property. Thus, 'included' could refer to all property Section 1115 itself references, and this would then be a reference to the superset of Section 541(a) property and the debtor's postpetition service income. Put another way, if Section 1115 entirely supplants Section 541 by specifically incorporating it and adding to it, the 'included' has a very broad meaning, essentially exempting individuals from the absolute priority rule as to unsecured creditors.").

[35] *See, e.g., In re Friedman*, 466 B.R. at 482 ("A plain reading of §§ 1129(b)(2)(B)(ii) and 1115 together mandates that the absolute priority rule is not applicable in individual chapter 11 debtor cases."); *In re Tegeder*, 369 B.R. at 480 ("Since § 1115 broadly defines property of the estate to include property specified in § 541, as well as property acquired post-petition and earnings from services performed post-petition, the absolute priority rule no longer applies to individual debtors who retain property of the estate under § 1115.").

Under the "narrow view," courts have concluded that § 1115 was intended only to *add* certain property to the estate: property of the kind specified in § 541 that is acquired postpetition and earnings for postpetition services.[36] Courts adopting the "narrow view" have concluded that when Congress amended § 1129(b)(2)(B)(ii) to allow an individual chapter 11 debtor to retain "property included in the estate under section 1115," it only intended to allow an individual debtor to retain the property that § 1115 added, not the rest of the estate's property.[37]

To date, the Eleventh Circuit has not considered this issue. But all the circuit courts of appeal that have considered it—the Fourth, Fifth, Sixth, Ninth, and Tenth Circuits—have adopted the "narrow view."[38] This Court likewise adopts the "narrow view."

---

[36] *See, e.g., In re Lively*, 717 F.3d at 410 ("[Section] 1115 expressly states that property is being 'added' to that comprised by § 541; the section does not supersede § 541 property, any more than '2' supersedes '3' when added to it."); *In re Stephens,* 704 F.3d at 1285 ("[T]he narrow view holds that § 1115 merely adds to—but does not replace—§ 541's definition of estate property for individual debtors."); *In re Maharaj,* 681 F.3d at 568–69 ("On one view, the phrase "included in" means the equivalent of "added to," since property of the estate has long been defined under § 541.").

[37] *See, e.g., In re Martin*, 497 B.R. at 357 ("[T]he Court concludes that the 'property specified in § 541' is not the property added under § 1115 that the debtor may keep under the exception to the absolute priority rule now contained in § 1129(b)(2)(B)(ii). The property that is added by § 1115 is limited to the earnings from post-petition services described in § 1115(a)(2). And that is the property excepted from the absolute priority rule by the amendment to § 1129(b)(2)(B)(ii). As to other property, the absolute priority rule continues to apply as it did before the BAPCPA Amendments."); *In re Gelin*, 437 B.R. at 442 – 43 ("The changes to § 1129(b)(2)(B)(ii) under BAPCPA did not entirely exempt individual Chapter 11 debtors' plans from the absolute priority rule. Individual debtors in Chapter 11 cases can retain their post-petition assets and earnings. But they cannot cram down a plan that contemplates retention of pre-petition assets unless they get acceptances from unsecured creditors or pay them in full. The absolute priority rule of § 1129(b)(2)(B)(ii) still mandates this result.").

[38] *Zachary v. Cal. Bank & Trust*, 811 F.3d 1191, 1199 (9th Cir. 2016) ("We conclude today that the BAPCPA amendments do not impliedly repeal the long-standing absolute priority rule."); *Ice House Am., LLC v. Cardin*, 751 F.3d 734, 740 (6th Cir. 2014) ("For the reasons given, we think the best interpretation of the 2005 amendment to § 1129(b)(2)(B)(ii) is the one we adopt today. So does every other circuit court to have reached the issue. We therefore hold that the absolute-priority rule continues to apply to pre-petition property of individual debtors in Chapter 11 cases.") (citations omitted); *In re Lively*, 717 F.3d at 410 ("The absolute priority rule, in particular, has been a cornerstone

1.    <u>Section 1129(b)(2)(B)(ii)'s plain and unambiguous language supports the "narrow view."</u>

"The task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself."[39] And when that language is plain and unambiguous, the Court's task must end where it begins.[40] That is because when a statute's language is plain and unambiguous, this Court's task is to enforce the statute according to its terms, except in the extraordinarily rare circumstance in which the statute's language leads to "absurd" results unintended by Congress.[41]

---

of equitable distribution for Chapter 11 creditors for over a century. We must presume Congress was well aware of that rule and, in the absence of a clearer directive, modified § 1129(b)(2)(B)(ii) in order to refine it, not reverse it, for individual debtors."); *In re Stephens*, 704 F.3d at 1287 ("Because both the statutory language and Congress's intent are ambiguous, we heed the presumption against implied repeal. '[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest.' . . . Here, the statutory language and legislative history lack any clear indication that Congress intended to erode a pillar of creditor bankruptcy protection. Especially in light of the fact that Congress has expressly repealed the [absolute priority rule] in the past, we decline to find an implied repeal here.") (citations omitted); *In re Maharaj*, 681 F.3d at 565 ("[F]or the reasons set forth above, we believe that Congress did not intend to abrogate the absolute priority rule for individual Chapter 11 debtors. The dramatic nature of such a departure from longstanding pre-BAPCPA law, the ambiguous language of the statutes, and the total lack of any indication in the legislative history of such an intent, lead us to conclude that Congress intended to and did preserve the absolute priority rule. Congress knows how to eliminate or partially abrogate the absolute priority rule; it has done so before, but did not do so again in BAPCPA.").

[39] *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

[40] *Id.* ("In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'").

[41] *United States v .Garco*, 54 F.4th 1274, 1283 (11th Cir. 2022) (explaining that the "absurdity" doctrine "permits a court to 'depart from the literal meaning of an unambiguous statute . . . where a rational Congress could not conceivably have intended the literal meaning to apply,' but that the doctrine applies "only under rare and exceptional circumstances") (quoting *Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1350 (11th Cir. 2021) (Pryor, C.J., concurring)).

Section 1129(b) is plain and unambiguous and does not lead to absurd results. The key to understanding § 1129(b) (and § 1115) is the word "included." Section 1129(b)(2)(B)(ii) permits an individual chapter 11 debtor to retain "property *included* in the estate under section 1115." "Include" is a transitive verb meaning "to take in or comprise as a part of a whole or group."[42] So under § 1129(b)(2)(B)(ii), an individual chapter 11 debtor may retain the property that is "taken in" to the estate under § 1115.

What property is "taken in" to the estate under § 1115? By its own terms § 1115 *includes*—i.e., takes in to the estate (1) property of the kind specified in § 541 that is acquired postpetition; and (2) earnings from postpetition services.[43] What about § 541 property? Section § 1115 says that the property "included" in the estate is "in addition to the property specified in section 541." Although § 1115 references § 541 property, § 1115 does not "take" it into the estate because that property is, by definition, already in the estate in all cases, including individual chapter 11 cases.[44]

This Court agrees with the Fifth Circuit Court of Appeals that it is a stretch to read § 1115 as taking § 541 property into the estate:

---

[42] *Include*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/include.

[43] 11 U.S.C. § 1115(a)(1) – (2).

[44] 11 U.S.C. § 541(a)(1) (providing that subject to certain enumerated exceptions, "[t]he commencement of a case under section 301 302, or 303 of this title creates an estate" that is "comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case"); 11 U.S.C. § 103(a) (providing that "[e]xcept as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title"); *Ice House Am., LLC v. Cardin*, 751 F.3d 734 (6th Cir. 2014) ("Section 1115 cannot take into the estate property that was already there. And long before Congress enacted the 2005 amendments, § 541 had already brought into the estate 'all legal or equitable interests of the debtor in property as of the commencement of the case.'").

> The case law finding ambiguity rests on the terms "included in" and "under," two words not normally the subject of such parsing. Reading the phrase in § 1129(b)(2)(B)(ii) to evince ambiguity seems a grammatical stretch, because § 1115 expressly states that property is being "added" to that comprised by § 541; the section does not supersede § 541 property, any more than "2" supersedes "3" when added to it.[45]

Sections 1115 and 1129 are unambiguous: regardless of whether unsecured creditors are paid in full, an individual chapter 11 debtor may retain property that is taken into the estate under § 1115, namely (1) property of a kind specified in § 541 that is acquired postpetition; and (2) earnings for postpetition services. Section 541 property—i.e., prepetition property—is not taken into the estate under § 1115. Therefore, § 1129(b) does not abrogate the absolute priority rule in individual chapter 11 cases, so unless unsecured creditors are paid in full or the plan is consensual, an individual chapter 11 debtor may not retain such prepetition property.

> 2.  <u>There is no evidence Congress intended to abrogate the absolute priority rule.</u>

Even if § 1129(b)'s language were ambiguous, the outcome would still be the same. This Court is faced with two interpretations of § 1129(b)—one that does not abrogate the absolute priority rule (the "narrow view") and one that does (the "broad view"). Interpreting § 1129(b) in a way that abrogates the absolute priority rule would run afoul of fundamental rules of statutory interpretation.

More than a decade ago, in *Hamilton v. Lanning*, the United States Supreme Court reaffirmed that it "will not read the Bankruptcy Code to erode past bankruptcy

---

[45] *In re Lively*, 717 F.3d 406, 410 (5th Cir. 2013).

practice absent a clear indication that Congress intended such a departure."[46] For most of the past 100 years, the absolute priority rule has been "central to the bankruptcy bargain."[47] Yet, as the Fourth Circuit Court of Appeals explained in *In re Maharaj*, "there is nothing in BAPCPA's legislative history that suggests that Congress intended to repeal the absolute priority rule."[48]

Had Congress intended to do so, its silence would be an "odd occurrence for such a significant change."[49] Eighty years ago, the Supreme Court, in *In re John M. Russell, Inc.*, observed that it could not "help but think that if Congress had set out to make . . . a major change [to the Bankruptcy Act of 1898], some clear and unambiguous indication of that purpose would appear."[50] More recently, in *United States Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, the Supreme Court likewise observed that "[i]t is most improbable that Congress would have made a major change [to the Bankruptcy Code] without specifically mentioning it in the legislative history."[51]

---

[46] 560 U.S. 505, 517 (2010) (quoting *Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 454 (2007); *Lamie v. United States Trustee*, 540 U.S. 526, 539 (2004); *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998)).

[47] Elizabeth Warren, *A Theory of Absolute Priority*, 1991 Ann. Surv. Am. L. 9, 11 (February 1992)*; see also Douglas G. Baird, Priority Matters: Absolute Priority, Relative Priority, and the Costs of Bankruptcy*, 165 U. Penn. L. Rev. 785, 787 (March 2017) ("The absolute priority rule is the organizing principle of the modern law of corporate reorganizations.").

[48] *In re Maharaj*, 681 F.3d 558, 572 (4th Cir. 2012).

[49] *Id.*

[50] 318 U.S. 515, 521 (1943).

[51] 484 U.S. 365, 367 (1988).

In the past, when Congress repealed the absolute priority rule by repealing the "fair and equitable requirement" in Chapter XI cases, it specifically expressed its intent to do so. In the House Report, Congress explained that the "fair and equitable" requirement could not realistically be applied in Chapter XI cases, so it amended the relevant sections in a way that "made clear that the rule of the *Boyd* and *Los Angeles* cases shall not be operative."[52] No such intent, however, appears in BAPCPA's legislative history.

What's more, when Congress repealed the "fair and equitable" requirement in 1952, it did so in a straightforward way in the statute's text: "[c]onfirmation of an arrangement shall not be refused solely because the interests of a debtor, or if the debtor is a corporation, the interest of its stockholders or members will be preserved under the arrangement."[53] The same is true when, more recently, Congress repealed the absolute priority rule in subchapter V cases by providing that § 1129(b) "do[es] not apply in a case under this subchapter."[54]

Had Congress intended to repeal the absolute priority rule in individual chapter 11 cases, it could just as easily have done so, as the *Maharaj* court pointed out, by adding the words "except with respect to individuals" at the beginning of § 1129(b)(2)(B)(ii).[55] Or it could have added that phrase to the end: ". . . the holder of

---

[52] H.R. Rep. No. 82–2320, 82nd Congress (1952) *reprinted in* 1952 U.S.C.C.A.N. 1960, 1981 – 82 (citations omitted); *In re Maharaj*, 681 F.3d at 561.

[53] Pub. L. 456, 66 Stat. 420, 433 (1952).

[54] 11 U.S.C. § 1181(a).

[55] *In re Maharaj*, 681 F.3d at 566.

any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except in a case in which the debtor is an individual.*"[56]

To adopt the "broad view," this Court would have to accept that Congress chose "a startling, and most indirect, way . . . to have effected partial implicit repeal of the very provision that [§ 1129(b)(2)(B)(ii)] amended."[57] To borrow a phrase from administrative law, Congress "does not, one might say, hide elephants in mouseholes."[58] Because the "broad view" effects an implicit repeal of the absolute priority rule in individual chapter 11 cases in the most indirect way, without any indication from Congress of its intent to do so, the Court declines to adopt it.

The "narrow view" provides a more natural, straightforward reading of § 1129(b)(2)(B)(ii): even if an individual chapter 11 debtor does not pay unsecured creditors in full, he or she may retain property of a kind specified in § 541 that is acquired postpetition, as well as earnings from postpetition services. More important, that reading does not effect a repeal of the absolute priority rule. To the contrary, it "maintains the pre–2005 scope of the absolute-priority rule,"[59] which is consistent

---

[56] *Ice House Am., LLC v. Cardin*, 751 F.3d 734, 739 (6th Cir. 2014) ("[W]e think it much more likely that, if Congress meant to except individual debtors from the absolute-priority rule, it would have simply amended § 1129(b)(2)(B)(ii) to say something more like the following: 'the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except in a case in which the debtor is an individual.*'").

[57] *In re Lively*, 717 F.3d 406, 409 (5th Cir. 2013)

[58] *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

[59] *Ice House Am.*, 751 F.3d at 739. Pre-BAPCPA, property of a kind specified in § 541 that was acquired postpetition and earnings for postpetition services were not part of an individual chapter 11 debtor's bankruptcy estate. Post-BAPCPA, they are. But under the "narrow view," an individual chapter 11

with Congress' silence in the legislative history. Therefore, even if § 1129(b)(2)(B)(ii) is ambiguous, this Court adopts the "narrow view" and concludes the absolute priority rule applies in individual chapter 11 cases.

B.    The absolute priority rule does not preclude individual chapter 11 debtors from retaining exempt property.

Having concluded that the absolute priority rule applies in individual chapter 11 cases, the Court must now determine whether it applies to exempt property. Putting aside the exception for individual cases discussed above (i.e., an individual chapter 11 debtor may retain postpetition property and earnings), § 1129(b) provides that if unsecured creditors are not paid in full, a plan is "fair and equitable" only if "the holder of any claim or interest that is junior to the claims of such class *will not receive or retain under the plan on account of such junior claim or interest any property*."[60] Although courts are unanimous that individual debtors violate the absolute priority rule if they receive or retain *non-exempt* property, courts are split over whether they violate the absolute priority rule if they receive or retain *exempt* property.[61]

---

can still retain that property even if unsecured creditors are not paid in full. So the scope of the absolute priority rule remains the same under the "narrow view."

[60] 11 U.S.C. § 1129(b) (emphasis added).

[61] *Compare MJPB, Inc. v. Fross (In re Fross)*, 1999 WL 26886, at *11 (B.A.P. 10th Cir. Jan. 15, 1999) ("[W]here a debtor intends to avail itself of the protection available under Chapter 11 and pay less than 100% to unsecured creditors, . . . the debtor will be required to contribute all of his or her property, exempt or otherwise, to the extent required under § 1129(b)(2)(B)(ii) to obtain plan confirmation."); *In re Gosman*, 282 B.R. 45, 49 (Bankr. S.D. Fla. 2002) ("In the context of an individual Chapter 11 proceeding, there is no dispute that if the Debtor were to retain certain property of the estate, i.e., non-exempt property, then the Debtor would be in violation of the absolute priority rule if the dissenting class of unsecured creditors are not paid in full . . . . The foregoing result is no different where the Debtor proposes to retain exempt property as opposed to non-exempt property."); *In re Kovalchick*, 1995 WL 118171, at *4 (Bankr. E.D. Pa. 1995) ("Because the Debtors retain their 'interests' as well as

18

Courts holding that individual debtors may not retain exempt property focus on the words "any property." For example, in *In re Fross*, the Bankruptcy Appellate Panel for the Tenth Circuit noted that while Congress referred to "property of the estate" no less than four times in § 1123, it did not do so in § 1129(b)(2)(B)(ii).[62] That omission, the *Fross* court concluded, was intentional.[63] The *Fross* court "read the fact

the property and assets of the estate, and these interests and the estate include both exempt and nonexempt property, the Plans violate the [absolute priority rule]."); *In re Ashton*, 107 B.R. 670, 674 (Bankr. D.N.D. 1989) ("Section 1129(b)(2)(B)(ii) says that a debtor may not retain any property without qualification. There is no distinction between exempt and non-exempt property."); *In re Yasparro*, 100 B.R. 91, 95 (Bankr. M.D. Fla. 1989) ("Section 1129(b)(2)(B)(ii) specifically provides to meet the absolute priority rule the Debtor may not retain 'any property' if the unsecured creditors are not to be paid in full. The Code section makes no distinction between exempt and non-exempt property nor as to value.) *with In re Martin*, 497 B.R. 349, 352 (Bankr. M.D. Fla. 2013) ("Although some courts have held that even the retention of exempt property violates the absolute priority rule, the majority (and better reasoned) decisions disagree, concluding that the total liquidation of an individual Chapter 11 debtor's assets is not required in order to satisfy the absolute priority rule."); *In re Gerard*, 495 B.R. 850, 855 (Bankr. E.D. Wis. 2013) ("In *In re Bullard*, the bankruptcy court agreed that the better line of authority holds that the debtor's retention of his exempt property does not offend § 1129(b)(2)(B) because such retention is not 'on account of the debtor's junior interest' in property. Similarly, the court in *In re Steedley*, concluded that a debtor does not retain exempt property 'on account of' an interest junior to the creditors and thus does not violate the absolute priority rule by proposing to keep exempt property. This Court agrees and adds that the debtor's exempt property that has been removed from the estate prior to confirmation is not property that is received or retained 'under the plan' as required for application of the absolute priority rule."); *In re Bullard*, 358 B.R. 541, 544 – 45 (Bankr. D. Conn. 2007) ("There is disagreement among the cases concerning whether a chapter 11 debtor may retain his exempt property and still comply with Section 1129(b)(2)(B)(ii). . . . The better line of authority holds that the debtor's retention of his exempt property does not offend Section 1129(b)(2)(B)(ii) because such retention is not "on account of . . . [the debtor's] junior interest . . ." in property."); *In re Henderson*, 321 B.R. 550, 561 (Bankr. M.D. Fla. 2005) ("This Court in not unmindful that a Judge of this District in the case of *In re Yasparro* [ruled] that if an individual debtor retained exempt property under the plan, the plan violates the absolute priority rule unless all creditors receive full and complete satisfaction of their claims. This Court is constrained to reject the holdings of both *In re Yasparro*, and *In re Gosman*, and is satisfied that the individual debtor does not have to forfeit his exemption rights to which the debtor is otherwise entitled to in all operating Chapters of the Code as a price of obtaining confirmation of his or her plan of reorganization.") (citations omitted).

[62] *In re Fross*, 1999 WL 26886, at *8 ("Section 1129(b)(2)(B)(ii) provides that the junior claim or interest holder may not receive or retain 'any property.' As acknowledged by the bankruptcy court, the Code is replete with references to either property 'of the estate' or 'of the debtor.' More to the point, in § 1123 dealing with the contents of a Chapter 11 plan, the Code refers to property of the estate no less than four times.") (citing 11 U.S.C. §§ 1123(a)(5)(A), (B), (D); (b)(4)) (citations omitted).

[63] *Id.* ("[W]e must view the omission of a reference to either property 'of the estate' or 'of the debtor' in § 1129(b)(2)(B)(ii) as intentional.").

that § 1129(b)(2)(B)(ii) does not expressly exclude exempt property to mean that the broad reference to 'any property' includes both exempt and nonexempt property."[64]

The court came to the same conclusion in *In re Gosman*,[65] the only reported decision on this issue in this district. In *Gosman*, the court reasoned that had Congress intended to exclude exempt property from the scope of the absolute priority rule, it could have used other words to modify "property"—such as "non-exempt property" or "property of the estate"—rather than "any."[66] The word "any," the court noted, is "unlimited" in nature, meaning "every" and "all."[67] Because "any property" is not equivalent to "property of the estate," and Congress omitted reference to "property of the estate," the court concluded that Congress chose not to allow individual chapter 11 debtors to retain exempt property.

In focusing on the words Congress did not include in § 1129(b) (i.e., "non-exempt property" or "property of the estate"), however, the courts in *Fross* and *Gosman* ignore the words Congress did include.[68] Congress did not simply say that unless unsecured creditors are paid in full, the debtor cannot "receive or retain *any property*." Had Congress said only that, this Court might be inclined to agree with *Fross* and *Gosman*. But Congress said that if unsecured creditors are not paid in full,

---

[64] *Id.*

[65] 282 B.R. 45, 49 (Bankr. S.D. Fla. 2002).

[66] *Id.*

[67] *Id.*

[68] *See id.* at 48 ("Here, the Court looks no further than the words 'any property.'").

a debtor cannot receive or retain any property "*under the plan on account of such junior claim or interest.*"[69]

An individual chapter 11 debtor does not retain exempt property "*under the plan.*" Bankruptcy Code § 1123 mandates that a plan provide adequate means for its implementation, including "retention by the debtor of all or any part of the *property of the estate.*"[70] Exempt property is not property of the estate. And § 1141, which governs the effect of confirmation, provides that "confirmation of a plan vests all of the *property of the estate* in the debtor."[71] Thus, what a debtor retains under the plan is *property of the estate*—i.e., non-exempt property.

Exempt property is retained under § 522. Section 522(b) specifically authorizes a debtor to exempt certain property from the estate.[72] In short, an individual chapter 11 debtor does not retain exempt property under the plan. Indeed, the only provision in the Code that talks about a debtor retaining property under the plan says that a debtor retains *property of the estate* under the plan. So § 1129(b)'s specific reference to property retained "under the plan" limits the absolute priority rule's prohibition to property of the estate, which simply does not include exempt property.

Moreover, individual debtors do not retain exempt property *on account of their claim or interest.* Nearly two decades ago, in *In re Henderson*, the court concluded

---

[69] 11 U.S.C. § 1129(b)(2)(B)(ii) (emphasis added).

[70] 11 U.S.C. § 1123(a)(5)(A) (emphasis added).

[71] 11 U.S.C. § 1141(b) (emphasis added).

[72] 11 U.S.C. § 522(b).

that an individual chapter 11 debtor does not retain exempt property *on account of their claim or interest*—a debtor "retains it as a matter of right by virtue of recognition of his right to exemptions."[73] Since *Henderson*, other bankruptcy courts have agreed that individual chapter 11 debtors do not retain property *on account of their claim or interest*.[74]

More important, just three years ago, the Ninth Circuit Court of Appeals—the only Circuit Court of Appeal to address this issue—came to the same conclusion.[75] In *In re Juarez*, the Ninth Circuit emphasized that "Congress must have intended the 'on account of' language to have some significant meaning as well as some particular limiting effect."[76] As the Ninth Circuit explained, it is "'widely accepted that property deemed exempt from a debtor's bankruptcy estate revests in the debtor' under 11 U.S.C. § 522."[77] Therefore, the Ninth Circuit concluded that a debtor does not violate the absolute priority rule by retaining exempt property because a debtor "obtains exempt property from the bankruptcy estate by virtue of the right to exempt certain property under § 522, not 'under the plan *on account of [a] junior claim or interest*.'"[78]

---

[73] *In re Henderson*, 321 B.R. 550, 559 (Bankr. M.D. Fla. 2005).

[74] *See, e.g., In re Martin*, 497 B.R. 349, 352 (Bankr. M.D. Fla. 2013); *In re Steedley*, 2010 WL 3528599, at *3 (Bankr. S.D. Ga. 2010); *In re Bullard*, 358 B.R. 541, 545 (Bankr. D. Conn. 2007).

[75] 836 F. App'x 557, 561 (9th Cir. 2020).

[76] *Id.* (quoting *Bonner Mall P'ship v. U.S. Bancorp Mtg. Co.* ( *In re Bonner Mall P'ship)*, 2 F.3d 899, 909 (9th Cir. 1993), *abrogated on other grounds by Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015)).

[77] *Id.*

[78] *Id.* (emphasis added).

By contrast, individual debtors do retain property of the estate on account of their interest (i.e., ownership interest).

This reading also simply makes sense. The idea behind property being exempt and passing through bankruptcy unmolested is to allow debtors to retain property that state or federal law deems essential for daily living, such as a primary residence, tools of a trade, retirement savings, or a car. That property is no less essential in an individual chapter 11 than it is in an individual chapter 7.

As explained above, when the language of a statute is plain and unambiguous, this Court's task is to enforce the statute according to its terms.[79] Here, the language of § 1129(b)(2)(B)(ii) is plain and unambiguous: unless an individual chapter 11 debtor pays unsecured creditors in full, he or she cannot retain any property (other than the property included under § 1115) under the plan on account of such junior claim or interest. Because a debtor does not retain exempt property under a plan or on account of his or her junior claim or interest, an individual chapter 11 debtor does not violate the absolute priority rule by receiving or retaining exempt property.

Of course, having found the absolute priority rule does apply to property of the estate (other than the property included under § 1115), the Debtor's plan violates the rule because under it the Debtor retains the watches and cash which are prepetition, non-exempt, property of the estate.

---

[79] *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

### III.    Conclusion

In an individual chapter 11 case, a debtor may only retain three categories of property under § 1129(b) if unsecured creditors are not paid in full: (1) exempt property; (2) property of a kind specified in § 541 that is acquired postpetition; and (3) earnings from postpetition services. So, even though the Debtor is paying his unsecured creditors less than four cents on the dollar, he can retain the Greensboro property and the Ford F-250, which are exempt. But the Debtor cannot retain any portion of $12,060 that is not exempt, acquired postpetition, or is not earnings for postpetition services or the two watches, which are not exempt and were not acquired postpetition. Accordingly, it is

ORDERED that the Debtor's Motion for Cramdown is DENIED. However, the Debtor, if he so desires, may have leave to amend the plan within 30 days to correct this defect and seek confirmation, possibly without having to resolicit.

###

Copies To:

All Parties in Interest